UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LUIS MEDARDO AUCATOMA RAMOS,

Petitioner,

v.

PHILIP RHONEY, in his official capacity as the Acting Field Office Director of the Buffalo Field Office of the United States Immigration and Customs Enforcement, et al.,[1]

Respondents.

---

**ORDER**

6:26-CV-06286-EAW

Petitioner Luis Medardo Aucatoma Ramos ("Petitioner") is a civil immigration detainee alleging that he is being detained in United States Immigration and Customs Enforcement ("ICE") custody pending removal proceedings in violation of the United States Constitution and seeks relief under 28 U.S.C. § 2241. (Dkt. 1). Petitioner alleges that he is a 35-year old Ecuadorian citizen suffering from kidney failure, who has lived in

---

[1] Michael Ball is the Acting Deputy Field Office Director of the Buffalo Field Office of the United States Immigration and Customs Enforcement and thus is substituted as Respondent in place of James Bausch pursuant to Federal Rule of Civil Procedure 25(d). In addition, Markwayne Mullin is the current Secretary of the Department of Homeland Security and is substituted in place of Kristi Noem. The Clerk of Court is directed to update the docket to reflect these substitutions.

this country since entering without inspection on or about December 19, 2022,[2] seeking asylum. (*Id.* at ¶ 1). Although his application for asylum was denied by an immigration judge ("IJ"), an appeal is pending and no final order of removal has been issued. (*Id.*).

Petitioner was taken into ICE custody on January 5, 2026. (*Id.* at ¶ 2). Respondents contended that Petitioner was detained pursuant to 8 U.S.C. § 1225 based on a recent change in the interpretation of that provision, consistent with *In re Matter of Yajure Hurtado*, 29 I&N Dec. 216 (B.I.A. 2025). (Dkt. 4 at 2-3). This Court rejected that argument, and on March 17, 2026, issued an order directing that Petitioner receive a bond hearing at which Respondents bear the burden to demonstrate, by clear and convincing evidence, that Petitioner is a danger to the community or a flight risk and at which the IJ must consider non-bond alternatives to detention or, if setting a bond, Petitioner's ability to pay. (Dkt. 5).

A bond hearing was held in Batavia, New York, on March 24, 2026, before IJ Aviva L. Poczter, and IJ Poczter issued an order finding that "[n]o alternatives to detention or bond amount can mitigate Respondent's extreme flight risk." (Dkt. 7 at 2). That same day, Petitioner's counsel filed a letter asking that Petitioner be immediately released due to the failure to comply with this Court's directions. (Dkt. 6). Respondents alleged to the contrary (Dkt. 7; *see also* Dkt. 10), and the Court issued a Text Order requiring Respondents to file the transcript of the bond hearing by April 9, 2026 (Dkt. 8). Respondents failed to comply with the Court's directions, prompting the undersigned to

---

2 At the bond hearing, counsel for Respondents alleged that Petitioner entered in February 2023. (Dkt. 12 at 5).

issue a further Text Order on April 17, 2026, indicating that if the requested transcript was not filed by April 20, 2026, Petitioner would be ordered released. (Dkt. 9). Ultimately the Court extended Respondents' time to provide the transcript until April 24, 2026 (Dkt. 11), and the transcript was filed by that date (Dkt. 12).

As an initial matter, the Court rejects Respondents' jurisdictional and exhaustion arguments, for the same reasons previously articulated in *Adejola v. Barr*, 439 F. Supp. 3d 120, 126-28 (W.D.N.Y. 2020). As for whether the IJ complied with the Court's directions, she did not. The IJ did not even attempt to comply or even acknowledge the Court's directions. (*See generally* Dkt. 12). The extent of the IJ's reasoning for her denial of bond (based solely on flight—Respondents did not argue danger) was as follows:

> Well, Counsels, the only thing that really gives me pause is his health condition, I'll say that. But at this point, Counsels, I think he's a tremendous flight risk. He has, he has an appeal pending, its fully briefed as of today, I checked. It was a denial on the merits. While I can't speculate about [what] the Board is going to do, I did scroll through the decision and its lengthy. It's a lengthy fulsome decision. So there really is probably no relief, which makes him a pretty serious flight risk. And he hasn't been in the US that long and we don't have employment evidence either.

(Dkt. 12 at 7). In other words, the IJ based her decision on her assessment of Petitioner's likelihood of success with his asylum application and his relatively short period of time in the United States, without any acknowledgement of the burden of proof directed by this Court or the instructions that the IJ consider less-restrictive alternatives to detention to accomplish Respondents' goals. The IJ failed to consider, or even acknowledge, the fact that Petitioner has kept all his appearances and followed all directions (even presumably after his asylum request was denied at the IJ-level); or the fact that Petitioner has paid taxes

and lived at the same address in Rochester since entering this country, where a proposed sponsor also lives. And the IJ wholly failed to acknowledge the Court's instructions as to the appropriate parameters of any bond hearing. Whether this was the result of the IJ's intentional disregard of the Court's Order or ignorance as to its meaning, in either case it is egregious. And the disturbing nature of the IJ's disregard of the Court's instructions is only further compounded by Respondents' failure to timely file the bond hearing transcript as directed by this Court, as well as Petitioner's serious medical condition. (*See* Dkt. 1-3).

Finding that Respondents blatantly failed to comply with this Court's directions for a bond hearing—a bond hearing that Respondents refused to provide because of their new interpretation of a law that for decades was not construed in the manner now advanced, *see Cunha v. Freden*, No. 25-3141-PR, 2026 WL 1146044, at *25 (2d Cir. Apr. 28, 2026) (Cabranes, J., concurring) ("If Respondent is right that in 1996 Congress ordered the largest mass detention in American history, the world would have likely noticed sooner. Small wonder that some 90 percent of the hundreds of district judges across the land who have heard Respondent's argument have rejected it.")—the Court grants the habeas petition and orders Petitioner's immediate release.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: May 5, 2026
Rochester, New York